2025 IL App (1st) 231197-U

No. 1-23-1197

Order filed February 27, 2025

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 1145 |
| | ) | |
| VERNON JOHNSON, | ) | Honorable |
| | ) | Kenneth J. Wadas, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Rochford and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the defendant's 40-year sentence for first degree murder as the trial court did not consider a fact not in evidence and no plain error occurred.

¶ 2    Following a jury trial, defendant Vernon Johnson was found guilty of first degree murder and sentenced to 40 years in prison. On appeal, Johnson argues that the trial court plainly erred by considering a fact not in evidence at sentencing, namely, that Johnson's prior convictions showed

a "lack of respect" for women despite the complainants of the prior convictions being unknown to the court. We affirm.

¶ 3     Johnson was charged with first degree murder in the stabbing death of Robin Olsen (720 ILCS 5/9-1(a)(1), (2) (West 2018)).

¶ 4     At trial, evidence established that police officers discovered Olsen bleeding "about the head" at the bottom of stairs outside an apartment building on December 19, 2018. Olsen stated that Johnson attacked her. She was transported to the hospital where she eventually died from her wounds.

¶ 5     Two residents in the apartment building testified that they heard a woman screaming for help on December 19, 2018. When they looked outside, they saw a woman lying on the ground with blood around her and a man on top of her. He was moving his arm back and forth, which one resident described as a hitting or stabbing motion. The residents called the police.

¶ 6     Dr. Ponni Arunkumar, the medical examiner, testified that Olsen had cocaine in her system at the time of her death. Her injuries included multiple incised wounds on her hands, face, and neck, including a wound that stretched from "the left ear to the right side of the neck" and a stab wound on the left side of her neck most likely from a knife. Olsen also sustained blunt force injuries and abrasions to her head, neck, and upper and lower extremities. The injuries on Olsen's hands indicated self-defense.

¶ 7     Johnson testified that Olsen brandished a knife at him after a sexual encounter and looked as if "drugs [were] kicking in." Johnson lunged for the knife, struggled with Olsen, and "stabbed her once or twice." When he saw it had "no effect on her," he began swinging the knife "rapidly" at her. Olsen grabbed at the injuries on her face and neck, and Johnson stopped swinging the knife.

Johnson then walked away and discarded the knife in an alley. He did not call the police or ask for assistance for Olsen.

¶ 8    The jury found Johnson guilty of first degree murder. Johnson filed a motion for a new trial, which was denied.

¶ 9    Johnson's presentence investigation report (PSI) reflected that he was 46 years old, single, and had eight children ages 7 to 28 years old. He had a "good relationship" with his children and worked to provide for them. At the time of his arrest, he worked as a gas station clerk. He had a conviction for domestic battery from 2015.

¶ 10    At sentencing, the State amended the PSI to include a battery conviction from 2013. The certified copies of the 2013 and 2015 convictions do not name the complainants or indicate their gender.

¶ 11    In aggravation, the State published victim impact statements from Mark Olsen, Olsen's brother, and Cody Olsen, Olsen's son.[1] Mark expressed how he was "haunted" by seeing his sister struggle to remain alive. The thought of the "painful end of her life" was emotionally painful for him. Mark was saddened because Olsen's grandchildren would never know her love. Cody stated that he would never forget Olsen's injuries and he often woke at night because of them. Grief and anger had a "compelling effect" on his entire family.

¶ 12    The State argued that Olsen's death was "senseless" and "violent," and emphasized that Johnson's battery and domestic battery convictions showed his "violent nature." The State asked for a sentence "commensurate with the horrible pain and trauma inflicted on *** Olsen."

---

[1] As Mark Olsen and Cody Olsen share Olsen's last name, we refer to them by their first names.

¶ 13   In mitigation, Kenyale Medley-Woods testified that she had known Johnson for 18 years and he was the father of her son. Johnson played a "positive role" in her son's life and had a "special and unique" bond with each of his children. Medley-Woods described defendant as an "honest, loving, [and] God fearing man." Johnson's detention was "extremely tough emotionally" for their children.

¶ 14   Defense counsel argued that Johnson was turning 47 years old, was a productive member of society, and was involved in his children's lives. Defense counsel also stated that Johnson's attempt to "hurt himself" showed he was remorseful. Counsel then asked for a sentence toward the lower end of the range.

¶ 15   In allocution, Johnson expressed remorse, but asked the trial court to consider that Olsen had "drugs in her system" and that he acted in self-defense.

¶ 16   The court stated that it considered all factors in aggravation and mitigation. The court noted that Johnson was aware that Olsen had narcotics in her system and he should have "ran away" from her instead of engaging in a "transaction." It considered Johnson's prior convictions for battery and domestic battery, stating they were crimes of violence "indicative of the view that the defendant has towards woman [*sic*] which is a lack of respect in my view. And he didn't show any respect to this victim." It did not believe Johnson was remorseful or acted in self-defense, but rather that Johnson "brutally stabbed [Olsen] multiple times" and could have stayed, rendered aid, or called the police. According to the court, Johnson's "lack of respect" for women "made it easy" for him to walk away from Olsen as if she were "trash." These actions, the court noted, were not only "tragic" for Olsen's family but for Johnson's family as well. The court then sentenced Johnson to 40 years in prison. Johnson's motion to reconsider his sentence was denied.

¶ 17    On appeal, Johnson argues that the trial court considered a fact not in evidence at sentencing, namely, that Johnson's prior convictions for battery and domestic battery showed a "lack of respect" for women despite the complainants of those prior convictions being unknown to the court.

¶ 18    Johnson acknowledges this claim is forfeited as he neither objected at sentencing nor argued this claim in his motion to reconsider sentence, but he contends that the error constitutes plain error. See *People v. Hillier*, 237 Ill. 2d 539, 544 (2010) ("both a contemporaneous objection and a written postsentencing motion raising the issue are required" to properly preserve a sentencing error).

¶ 19    Forfeited sentencing claims may be reviewed under the plain error doctrine, a "narrow and limited exception" to forfeiture. *Id*. at 545. The burden of persuasion is on the defendant, who must first establish that a "clear or obvious error occurred." *Id*. For sentencing errors, the defendant must then show that "(1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Id*. This court must honor the procedural default where a defendant fails to establish plain error. *People v. Naylor*, 229 Ill. 2d 584, 593 (2008). Here, Johnson argues that this claim is reviewable under the first prong of the plain error doctrine.[2] We first determine whether an error at sentencing occurred at all. *Id*.

¶ 20    The Illinois Constitution provides that a trial court shall impose a sentence balancing "the seriousness of the offense" and "the objective of restoring the offender to useful citizenship." Ill.

---

[2] In his opening brief, defendant argued that this alleged error is also reviewable under the second prong of the plain error doctrine. In his reply brief, defendant abandons this position in light of the supreme court's decision in *People v. Johnson*, 2024 IL 130191, ¶ 92.

Const. 1970, art. I, § 11. The trial court has broad discretionary powers when imposing a sentence, and this court will not disturb a sentence within the statutory limits absent an abuse of discretion. *People v. Burton*, 2015 IL App (1st) 131600, ¶¶ 35-36. In sentencing, an abuse of discretion occurs when a sentence "varies greatly from the spirit and purpose of the law" or is "manifestly disproportionate to the nature of the offense." *People v. Contursi*, 2019 IL App (1st) 162894, ¶ 23.

¶ 21    In fashioning a sentence, the trial court must consider "both the seriousness of the offense and the defendant's rehabilitative potential" and carefully consider all factors in aggravation and mitigation. *Id.* ¶ 24; *People v. Jones*, 2019 IL App (1st) 170478, ¶ 50. These factors include "the defendant's age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment, and education, as well as the nature and circumstances of the crime and of defendant's conduct in the commission of it." *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). The seriousness of the offense is the most important factor in determining an appropriate sentence. *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123. The court is not required "to give greater weight to mitigating factors than to the seriousness of the offense," nor does the "presence of mitigating factors either require a minimum sentence or preclude a maximum sentence." *Id.*

¶ 22    In this case, Johnson was found guilty of first degree murder, which, as charged, carries a sentencing range of 20 years to 60 years in prison. 730 ILCS 5/5-4.5-20(a)(1) (West 2018). As Johnson's 40-year sentence falls within the statutory sentencing range, we must presume it is proper unless Johnson affirmatively establishes that the sentence was based on improper considerations. *People v. Cruz*, 2019 IL App (1st) 170886, ¶¶ 51, 54.

¶ 23 Johnson argues that he was deprived of a fair sentencing hearing, as the trial court improperly mentioned that his crimes showed his "lack of respect" for woman despite the trial court being unaware of the gender of the complainants from Johnson's prior convictions.

¶ 24 The defendant bears the burden of establishing that a sentence was based on improper considerations. *People v. Bowen*, 2015 IL App (1st) 132046, ¶ 49. A sentencing court may consider in aggravation "the *degree* of harm caused to a victim, even where serious bodily harm is arguably implicit in the offense," "the *manner* in which the victim's death was brought about," and "the *seriousness, nature*, and *circumstances* of the offense." (Emphases in original.) *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009). In determining whether the trial court based the sentence on proper aggravating and mitigating factors, a reviewing court should consider "the record as a whole, rather than focusing on a few words or statements by the trial court." *Id*. A sentence will not be reversed unless it is "clearly evident" that the sentence was "improperly imposed." *Bowen*, 2015 IL App (1st) 132046, ¶ 49.

¶ 25 At sentencing, the trial court noted it took all aggravating and mitigating factors into consideration. It noted that Johnson had prior convictions for battery and domestic battery, both crimes of violence, and that Johnson "brutally" stabbed Olsen multiple times and neglected to render or call for aid. These "tragic" actions impacted both Olsen's family and Johnson's family. While the trial court referenced that Johnson's prior convictions indicated a "lack of respect" for women without the identity and gender of the complainants being known to the court, the record as a whole indicates that this comment was made in conjunction with the court's discussion of the brutality of the offense at bar, which served as the court's primary basis for its sentence. This is evident in the court's remarks that defendant's "lack of respect" for women allowed him to stab

Olsen, a female, multiple times after a sexual encounter and "walk away" from her as if she were "trash." The court's comment on defendant's "lack of respect" for women in reference to his prior convictions was a passing comment that highlighted his prior crimes as ones of violence against others and was more so used to emphasize the seriousness and circumstances of Olsen's death. As such, the court did not err. See *Dowding*, 388 Ill. App. 3d at 943.

¶ 26 Even if the trial court's remarks were made in error, the evidence at the sentencing hearing was not closely balanced. The court considered in aggravation the victim impact statements of Olsen's brother and son, which detailed the emotional turmoil Olsen's family experienced as a result of her death. It also considered Johnson's prior battery and domestic battery convictions, both crimes of violence. Lastly, the court honed in on the seriousness and brutality of the offense at bar, mentioning that Johnson stabbed Olsen multiple times and abandoned her to die as if she were "trash" without rendering or calling for aid. In mitigation, defense counsel noted that Johnson was employed at the time of the incident and was involved in his children's lives. The court properly used its discretion in determining that the aggravating evidence, including the seriousness of the offense, which is the most important factor, outweighed the minimal mitigating evidence. See *Harmon*, 2015 IL App (1st) 122345, ¶ 123.

¶ 27 In sum, Johnson has not met his burden of affirmatively establishing that the trial court erred at sentencing. We therefore find no error in the court's sentencing decision and no plain error occurred. See *People v. Hood*, 2016 IL 118581, ¶¶ 18, 29 (there can be no plain error without a finding of error).

¶ 28 For the foregoing reasons, we affirm Johnson's sentence.

¶ 29 Affirmed.