2021 IL App (1st) 190694-U

No. 1-19-0694

Order filed January 8, 2021

First District

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 7077 |
| | ) | |
| LAWRENCE CLINTON, | ) | Honorable |
| | ) | Thomas J. Byrne, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's eight-year sentence, as a Class X offender, for delivery of a controlled substance is not excessive.

¶ 2    Following a jury trial, defendant Lawrence Clinton was convicted of delivery of a

controlled substance (heroin) (720 ILCS 570/401(d)(i) (West 2018)) and sentenced, as a Class X

offender, to eight years' imprisonment. On appeal, defendant argues his sentence is excessive. For the following reasons, we affirm.[1]

¶ 3    Because defendant does not dispute the sufficiency of the evidence, we recite only those facts necessary to our disposition. Defendant was charged with delivery of a controlled substance for unlawfully and knowingly delivering "less than one gram" of heroin. He represented himself at trial. The evidence at trial established that, on April 29, 2018, undercover Chicago police officers Paul Powers and Ignatius approached defendant, who was standing with several other individuals, on the corner of 16th Street and Pulaski Road. Officer Powers asked defendant if anyone was "working," which meant selling. Defendant asked what Officer Powers was looking for, and Officer Powers responded "D," which meant heroin. Defendant stated he could get some for Officer Powers.

¶ 4    The officers and defendant got into the officers' vehicle and defendant directed them about five blocks away to a residence on Kedvale Avenue. Defendant asked Officer Powers "how many," and Officer Powers asked for five bags of heroin. Officer Powers gave defendant $50 in prerecorded funds. Officer Powers denied telling defendant they would split a bag. Defendant walked to a nearby residence and was out of view for 10 to 15 minutes. He thereafter returned to the vehicle and gave Officer Powers two bags of suspected heroin and a $20 bill. A surveillance officer watched the officers' vehicle drive to Kedvale and observed an unknown "subject" exit the vehicle, enter a house, and then return to the vehicle.

_____

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.

¶ 5    Defendant gave Officer Powers his name "Pug" and phone number so Officer Powers could contact him if he needed anything else. After the officers dropped defendant off at 16th and Pulaski, Officer Ignatius gave a non-audible signal to his team members that a positive narcotics transaction occurred and drove away. Officer Powers gave his team defendant's description and his location. The surveillance officer directed the team to the "subject's location." Defendant was subsequently detained, and Officer Powers drove by and identified him. Officer Powers inventoried the bags of suspected heroin. The powder in one of the bags tested positive for 0.275 gram of heroin.

¶ 6    Defendant testified that he had been a drug addict for 40 years. He was not a seller. He agreed to help Officer Powers get "D" only if Officer Powers would split a bag with him. Defendant was trying to "get [his] ill off" and was merely standing on the street when Officer Powers approached him that day.

¶ 7    The jury found defendant guilty of delivery. He did not file any posttrial motions and continued to represent himself at his sentencing hearing.

¶ 8    Defendant's presentence investigation report (PSI), as amended by the State at the sentencing hearing, showed he had 11 prior convictions for: (1) robbery in 1981, with a 6-year sentence; (2) burglary in 1981, with a 3-year sentence; (3) robbery in 1986, with a 4-year sentence; (4) unlawful restraint in 1989, with 3 months' probation; (5) possession of a controlled substance in 1991, with a 4-year sentence; (6) possession of a controlled substance in 1993, with a 2-year sentence; (7) possession of a controlled substance in 1996, with a 2-year sentence; (8) armed robbery in 1996, with an 11-year sentence; (9) possession of a controlled substance in 2000, with a 3-year sentence; (10) possession of a controlled substance in 2010 with a 54-month sentence;

(11) possession of a controlled substance in 2011 with a 10-year sentence. The PSI also showed defendant had a pending case for manufacture/delivery of a controlled substance (case number 18 CR 7918), refused to participate with the investigating officer regarding the PSI investigation, and was 55 years old at the time of the sentencing.

¶ 9     In aggravation, the State called Chicago police officer Kevin Drumgoole as a witness. Officer Drumgoole testified he was an undercover narcotics purchasing and surveillance officer on May 12, 2018. Around 8:25 a.m. that morning, he was parked near the 3600 block of Roosevelt Road in an unmarked vehicle. Officer Drumgoole observed defendant standing on the sidewalk as Officer Ivy, a purchasing officer, pulled up next to him in an unmarked vehicle. Defendant approached the passenger side of Officer Ivy's vehicle, the two appeared to have a conversation, and defendant entered the vehicle. The vehicle relocated about a half mile away to the 4000 block of West 16th Street, where defendant exited.

¶ 10     Officer Drumgoole saw defendant walk into a vacant lot and reappear after a few minutes. Defendant opened Officer Ivy's vehicle door, appeared to reach inside, and then walked away. After Officer Ivy gave a predetermined signal for a positive narcotics transaction, Officer Drumgoole continued his surveillance of defendant and defendant was subsequently arrested. The bag defendant delivered to Officer Ivy was inventoried. Laboratory analysis showed .4 grams of powder from the bag contained heroin. Defendant was later charged under case number 18 CR 7918.

¶ 11     The State argued in aggravation that defendant had a lengthy criminal history dating back to 1981 and had been "in and out" of the Illinois Department of Corrections (IDOC). Further, he committed the delivery offense in pending case number 18 CR 7918 while he was out on bond.

The State noted defendant's most recent sentence for drug possession was for 10 years' imprisonment, and the impact of drug crimes on the community. The State asked for a "substantial sentence," informing the court defendant was a Class X offender based on his criminal background.

¶ 12    Defendant did not make any arguments in mitigation, but the court acknowledged that he had a certificate of completion from a 100-day drug treatment program at Westcare, which the court had ordered at defendant's request. Defendant requested further drug treatment in IDOC due to his "drug problem."

¶ 13    The court sentenced defendant, as a Class X offender based on his criminal history, to eight years' imprisonment. The court stated it considered the statutory factors in aggravation and mitigation, defendant's PSI, his allocution, and his pending case. The court considered defendant's "extensive" criminal history and that he was "actually delivering to other members in society." However, it also noted that defendant was a "long-time heroin addict," which "motivate[ed] his criminal conduct." The court stated the sentence was "extremely light" due to defendant's addiction, his age, and his repeated requests for drug treatment.

¶ 14    The court admonished defendant of his appeal rights, including that, to challenge his sentence, he must first file a motion to reconsider sentence. When the court asked whether defendant wanted to challenge his sentence, he responded, "No, I'm good." The court then asked, "You're happy with that sentence?" and defendant stated, "I ain't happy with it, but I'm going to have to take it anyway. I'm good. Got to put my appeal in. That's all." Defendant thereafter filed his notice of appeal.

¶ 15    On appeal, defendant argues his eight-year sentence for delivery of a controlled substance is excessive in light of the small amount of heroin involved, the non-violent nature of the offense, the orchestration of the controlled buy by police, his age, and his long-standing drug addiction, which accounted for his criminal history.

¶ 16    Defendant acknowledges his failure to preserve this issue by making a contemporaneous objection and raising it in a motion to reconsider sentence. See *People v. McGuire*, 2016 IL App (1st) 133410, ¶ 12 (issues are forfeited if not raised before the trial court via a contemporaneous objection and motion to reconsider). However, he asks that we review his claim under the second prong of the plain-error doctrine. Under the plain error doctrine, a reviewing court may consider unpreserved errors when a clear or obvious error occurred and (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant," or (2) "the error is so serious that it affected the fairness of the defendant's trial and the integrity of the judicial process." *People v. Jones*, 2016 IL 119391, ¶ 10. Our first consideration is whether an error occurred. *Id.* Because, as set forth below, we find that no error occurred in sentencing, we need not consider defendant's claim that such an error would be cognizable as plain error.

¶ 17    We accord great deference to a trial court's sentence and will not reverse it absent an abuse of discretion. *People v. Butler*, 2013 IL App (1st) 120923, ¶ 30 (citing *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000)). "A sentence which falls within the statutory range is not an abuse of discretion unless it is manifestly disproportionate to the nature of the offense." *People v. Jackson*, 375 Ill. App. 3d 796, 800 (2007). In determining an appropriate sentence, the trial court considers such factors as "a defendant's history, character, and rehabilitative potential, along with the seriousness of the offense, the need to protect society, and the need for deterrence and

punishment." *People v. Hernandez*, 319 Ill. App. 3d 520, 529 (2001). Absent some affirmative indication to the contrary, other than the sentence itself, we presume the trial court considered all mitigating evidence before it. *People v. Jones*, 2014 IL App (1st) 120927, ¶ 55. Because the trial court, having observed the proceedings, is in the best position to weigh the relevant sentencing factors (*People v. Arze*, 2016 IL App (1st) 131959, ¶ 121), we do not substitute our judgment for that of the trial court simply because we would have balanced the appropriate sentencing factors differently (*People v. Alexander*, 239 Ill. 2d 205, 213 (2010)).

¶ 18    Defendant was sentenced as a Class X offender to 8 years' imprisonment, well within the statutory range of 6 to 30 years. See 720 ILCS 570/401(d)(i) (West 2018) (delivery of heroin is a Class 2 felony); see also 730 ILCS 5/5-4.5-95(b) (West 2018) (certain defendants convicted of Class 1 or 2 felonies after having twice been convicted of an offense with the same elements as an offense now classified in Illinois as a Class 2 or greater felony, shall be sentenced as a Class X offender); 730 ILCS 5/5-4.5-25(a) (West 2018) (for Class X felonies, the sentencing range is 6 to 30 years' imprisonment). Thus, we presume his sentence was proper, absent some indication otherwise. See *People v. Burton*, 2015 IL App (1st) 131600, ¶¶ 36, 38 (A defendant "must make an affirmative showing that the sentencing court did not consider the relevant factors.").

¶ 19    Here, defendant has failed to point to anything in the record which would indicate that his sentence is an abuse of discretion. Although he alleges his eight-year sentence is excessive in light of the sentencing range of 3 to 7 years for Class 2 felonies and the non-violent nature of the offense, as previously noted, he was eligible for 6 to 30 years' imprisonment based on his criminal history, which mandated that he was sentenced as a Class X offender. Moreover, defendant had a lengthy criminal history, including six prior drug convictions, which support a sentence above the

minimum. See, e.g., *People v. Evangelista*, 393 Ill. App. 3d 395, 399 (2009) (finding that a defendant's criminal history "alone" may warrant a sentence "substantially above the minimum).

¶ 20    Defendant additionally asserts that the trial court failed to appropriately consider his age, drug addiction, and rehabilitative potential. However, we find these arguments unconvincing. Not only is the trial court presumed to consider all mitigating evidence before it (*Jones*, 2014 IL App (1st) 120927, ¶ 55), here the court specifically stated it considered the relevant statutory factors in aggravation and mitigation, defendant's PSI, his criminal history, and his long-standing drug addiction. See *People v. Babiarz*, 271 Ill. App. 3d 153, 164 (1995). ("Where the sentencing court examines a presentence report, it is presumed that the court considered the defendant's potential for rehabilitation.").

¶ 21    We are unpersuaded by defendant's claims that his addiction was a mitigating factor and the trial court failed to consider that the "vast majority" of his criminal history was a consequence of his drug addiction. The trial court was not required to accord defendant's addiction the weight he urges. See *People v. Montgomery*, 192 Ill. 2d 642, 674 (2000) ("[T]estimony about a defendant's history of alcohol and drug abuse is not necessarily mitigating. Although a defendant might urge this evidence in mitigation, as an explanation for his misconduct, the sentencer is not required to share the defendant's assessment of the information."). To the contrary, the trial court was not required to consider his addiction as mitigating at all. See *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 105 ("[u]nder the Unified Code, drug addiction is not an explicit factor in mitigation or aggravation."); 730 ILCS 5/5-5-3.1, 5-5-3.2 (West 2018) (listing statutory factors in mitigation).

¶ 22　More importantly, the record directly contradicts defendant's claims regarding the trial court's failure to consider his addiction. The trial court explicitly stated it considered defendant's extensive history of drug addiction and acknowledged that his addiction was the motivation for much of his criminal conduct. Further, it stated it was imposing an "extremely light" sentence due to defendant's age, issues with addiction, and his requests for drug treatment while incarcerated, thus demonstrating it considered defendant's addiction in fashioning an appropriate sentence.

¶ 23　We are similarly unpersuaded by defendant's contention that the trial court failed to consider the financial impact of his incarceration on the state of Illinois. At sentencing, the court is required to consider the financial impact of defendant's incarceration on the State based on the financial impact statement filed with the clerk of the court. 730 ILCS 5/5-4-1(a)(3) (West 2016). However, it was not obligated to recite and assign a value to every factor that it considered. *People v. Perkins*, 408 Ill. App. 3d 752, 763 (2011). Rather, absent evidence to the contrary, we presume the trial court considered the financial impact prior to sentencing defendant. *People v. Acevedo*, 275 Ill. App. 3d 420, 426 (1995). Defendant points to nothing in the record rebutting that presumption, and we therefore presume the court considered the financial impact of his incarceration prior to sentencing him to eight years. *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 22. In sum, we find the court did not abuse its discretion in sentencing defendant to eight years' imprisonment.

¶ 24　For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 25　Affirmed.